IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

N.A. Water Systems, LLC, et al.,                    Case No. 3:04CV7481

        Plaintiffs

    v.                                              ORDER

Allianz Underwriters Insurance Co.,

        Defendant

This is a breach of insurance contract case arising out of an explosion and fire at a water treatment facility. This court has jurisdiction pursuant to 28 U.S.C. § 1332.

## Background

On March 6, 2000, an explosion significant damaged a water treatment facility at the Sun Oil Refinery in Oregon, Ohio, owned by TWO, LLC (TWO). TWO, in turn, is owned under a joint venture agreement between Nalco, Inc. and U.S. Filter Operating Services (USFOS).[1] Defendant Allianz Underwriters Insurance Company (Allianz) issued a policy covering the TWO facility.

---

[1] USFOS is now known as Veolia Water North America Operating Services.

USFOS retained Chester Engineering (Chester)[2] to do the majority of the repair work on the TWO facility. Chester, in turn, hired Bullard Company (Bullard) to serve as the general manager. Bullard then subcontracted to RAM Industrial (RAM).

USFOS billed TWO for the repair work it performed. For the majority of the work, RAM billed Bullard, who billed Chester, who billed TWO. TWO would then submit its bills to Alan Breuck, the adjuster hired by Allianz.

In late 2000, Packer Engineering (Packer) reviewed the repair expenses. Packer concluded that Bullard and RAM were performing poorly. Brueck advised John Santelli of USFOS that Allianz would not pay unreasonable repair expenses. Shortly thereafter, USFOS and Chester terminated the Bullard/RAM contract.

Following removal of Bullard and RAM, Allianz suspended further payments until it could review all repairs and payments. New contractors completed the project.

Allianz paid nearly $5.9 million for the repairs, including all USFOS costs. Allianz rejected $594,000 in costs incurred or paid by Chester. Between $264,500 and $350,000 of that sum was for thirty to thirty-six new flame arrestors mandated by OSHA. The remaining $269,960 related to RAM invoices that Allianz deemed inadequately documented.

In May, 2003, Chester provided supporting documentation for roughly ninety-seven percent of the RAM invoices. Allianz rejected Chester's claim on three grounds: 1) Chester was not the insured party;

---

[2] Chester is now known as N.A. Water Systems, LLC.

2) the flame arrestors were excluded under the policy; 3) the Packer review concluded that Allianz had already paid more than it reasonably should have for the repairs.

In July, 2004, plaintiffs Chester and USFOS initiated this suit against Allianz. Two months later, on September 1, 2004, plaintiffs received an assignment of TWO's rights under the policy.

Pending are cross-motions for summary judgment. For the reasons that follow, defendant's motion shall be granted as to plaintiff's claims for promissory estoppel, breach of implied contract, and breach of contract insofar as the alleged breach includes the cost of the new flame arrestors.

## Discussion

Plaintiffs advance direct claims for breach of implied, oral contract and promissory estoppel as well as a claim for breach of contact as assignee of the TWO policy.

Allianz asserts the claims are time-barred under the policy, plaintiffs are not covered under the policy, the flame arrestors are excluded by the policy, and it never entered into any relations which could serve as the grounds for plaintiffs' implied contract or promissory estoppel claims.

### 1. Plaintiffs' Claims Are Not Time-Barred

Allianz contends plaintiffs' claims are barred by the policy's twelve month limitations clause. The loss occurred on March 6, 2000; the claims were made on February 6, 2005. Plaintiffs respond that Allianz, by leading plaintiffs to understand that the repairs would be covered, waived the running of the policy's one-year limitations period until April 14, 2004.

As a initial matter, I reject plaintiffs' contention that the language of Paragraph N, Section II – specifically that the suit must be commenced, "within twelve months next after inception of the loss, or as required by jurisdictional statute, whichever is greater" – means that plaintiffs can rely on the general fifteen-

3

year statute of limitations for Ohio contract actions. That language is properly read as relating to those states that mandate minimum suit limitation provisions longer than twelve months. As Ohio is not one of these states, twelve months remains the applicable period.

Nevertheless, Allianz did not reject the claims until April 14, 2004. As the Ohio Supreme Court stated in *Hounshell v. Am. States Ins. Co.*, 67 Ohio St.2d 427, 431 (1981):

> An insurance company may be held to have waived a limitation of action clause in a . . . insurance policy by acts or declarations which evidence a recognition of liability, or acts or declarations which hold out a reasonable hope of adjustment and which acts or declarations occasion the delay by the insured in filing an action on the insurance contract until after the period of limitation has expired.

Further, the court in *Hounshell* quoted the California Supreme Court in *Bollinger v. Nat'l Ins. Co. of Hartford*, 25 Cal. 2d 399, 405 (1944):

> While courts are diligent to protect insurance companies from fraudulent claims . . . it must not be forgotten that the primary function of insurance is to insure. When claims are honestly made, care should be taken to prevent technical forfeitures such as would ensue from an unreasonable enforcement of a rule of procedure unrelated to the merits.

67 Ohio St. 2d at 431.

Here, as in those cases, the insurance company acted as though all claims were going to be paid. Indeed, Allianz paid the vast majority of the claims under the policy until it rejected the flame arrestors and RAM charges on April 14, 2004, long after the limitations period had run.

Were I to give effect to such limitations clauses, insurance companies would be able simply to run out the clock on claims before rejecting them. No company would ever have to pay, and no insured would ever prevail in a coverage action.

Allianz waived the limitations defense when it routinely paid claims under the policy. The twelve-month limitations period did not begin to run until on April 14, 2004, Allianz's rejection of the claims for the arresters and the RAM claim put the plaintiffs on notice that there was a dispute.

### 2. TWO Properly Assigned its Claims to Plaintiffs

Allianz argues that plaintiffs cannot recover because TWO had no claims to assign to them. This argument is premised on the proposition that TWO never incurred any expenditure in repairing the site. Therefore, defendant argues, it could not assign the right to repayment to plaintiffs.

This is in error; TWO assigned the right to reimbursement for repairs to those who performed them. Thus, plaintiffs, as assignees, are entitled to recover the expenditures *they* incurred. TWO incurred a debt to plaintiffs and satisfied it by assigning their right to reimbursement for that debt. To require TWO to pay out on the debt prior to assignment or recovery would needlessly place form over substance.

### 3. Plaintiffs' Claims of Promissory Estoppel and Implied Oral Contract Fail

To succeed on their claim for promissory estoppel, plaintiffs must establish four elements: 1) a clear, unambiguous promise; 2) reliance on the promise by the person to whom the promise is made; 3) the reliance is reasonable and foreseeable; and 4) the person claiming reliance is injured as a result of reliance on the promise. *Weiper v. W.A. Hill & Assoc.*, 661 N.E.2d 796, 803 (Ohio Ct. App. 1995).

Plaintiffs contend they relied on representations made to them by Allianz's agent, Buddy Brueck, that they would be reimbursed for rebuilding work to the extent they provided adequate documentation.

Specifically, plaintiffs point to an e-mail from Breuck to John Santelli, the general manager of TWO on May 18, 2000. In that e-mail, Breuck wrote:

5

> The insurance company cannot give a letter which "pre-approves" any certain level of repair costs. We can say, however, that we are in agreement thus far with your plans, and that we have no particular "problems" with the planned work. As we have discussed previously, the insurance policy cannot make payments for the extra costs of any "upgrades" or "system improvements", but can only make payment based on restoring the existing process and equipment. Mr. Kane[3] and other USF personnel have explained all plans in detail and we do not believe, at this point, that there are any "upgrades" which would be an issue. All repairs planned thus far would, as far as we know, be fully covered under the policy. Naturally, should we find that some part of the repairs would not be covered fully, or which may only be partially covered or not at all, we would advise you promptly. As noted, however, we are not aware at this point of anything which would cause concern from a coverage viewpoint.

This e-mail – and the surrounding circumstances – fail to establish promissory estoppel.

First, the e-mail simply is not the sort of clear, unambiguous promise on which an estoppel claim may rest. It is riddled with hedging and equivocation. Any reliance plaintiffs placed on it to the extent that it promised to cover all documented costs was misplaced and unforeseeable.

What is clear from the e-mail is that any payments would be governed by the written policy. This stance is consistent with the overall course of dealings between the parties. On June 28, 2001, Kane went so far as to request a copy of the written policy.

Second, the e-mail on which plaintiffs rely was sent to John Santelli, the general manager of TWO, not plaintiffs. The simple fact that, as plaintiffs argue, it was foreseeable that the e-mail would be forwarded to plaintiffs with the postscript that "as long as we submit the bid packages to Buddy and IRI and obtain sign off prior to proceeding we should be covered," is insufficient. Allianz did not author the postscript and made no promise to plaintiffs.

---

[3] John Kane is the Manager for Project Development for Chester.

Third, the installation of the flame arrestors – the major expenditure giving rise to this litigation – occurred not because of any promise by Breuck, but because OSHA required the installation. Nor is it clear that any other part of the construction was performed in reliance on the alleged promise. In his deposition, Kane stated that the repairs would not have been altered in any way had Breuck objected to any costs:

> Q: If there had not been these representations from Buddy Brueck that led Chester to believe it would be reimbursed for the costs incurred in the repair of the facility, what would Chester have done differently?
>
> A: I don't think anything different.
>
> Q: Would you have done the same repairs?
>
> A: I believe so.

(Doc. 32 at 79-80).

Therefore, even assuming Brueck led Chester to believe all costs would be covered by the policy, Chester cannot show reasonable, foreseeable reliance. The repairs would have continued unaltered regardless of any representation – oral, e-mail, or otherwise – made by Brueck.[4]

Plaintiffs further contend that Breuck engaged in a course of dealing which gave rise to an implied oral contract. A party seeking to enforce an implied contract must prove "an offer by one side, acceptance

---

[4] John Wood of USFOS has testified that he met with Brueck repeatedly, and that Brueck approved each step of the repair process. While Wood's testimony about his relationship with Brueck might be enough to create a genuine issue of fact with regards to the promissory estoppel claim, it would only do so for USFOS, not Chester. Because USFOS has been paid in full by Allianz, it has no damages. Therefore, its claim fails as well.

7

on the part of the other, and a meeting of the minds as to the essential terms of the agreement." *Burgin v. Madden*, 2002 WL 1290869 at *4 (Ohio Ct. App. May 24, 2002) (quoting *McCarthy, Lebit, Crystal & Haiman Co., L.P.A. v. First Union Mgt., Inc.*, 622 N.E.2d 1093, 1097-98 (Ohio Ct. App. 1993)).

This claim fails for many of the same reasons as the promissory estoppel claim. It does not appear that there was ever a meeting of the minds, and a forwarded e-mail, standing alone and without response, does not manifest acceptance.

In any event, the exact terms of this purported implied in fact contract are unclear. *See Stars of Cleveland, Inc. v. Westfield Ins. Co.*, 2005 WL 428029, *3 (Ct. App.) ( "vagueness of expression, indefiniteness, or uncertainty as to any essential terms of the agreement prevents the creation of an enforceable contract").

There is a distinct lack of evidence that any of the parties ever intended their relations to be governed by anything other than the Allianz policy. The various communications of the parties make clear that they would be bound by the policy and act in accordance with its terms. Summary judgment is properly entered for defendant as to plaintiffs' claims of promissory estoppel and breach of implied contract.

### 4. The Flame Arrestors Were "Improvements" under the Policy

Allianz argues that the costs of the new flame arrestors is excluded by the policy. I agree. Paragraph F(5) of the Property Damages Expenses section excludes coverage for the cost to:

> [I]nstall process improvements or process modifications to property, when either is required or performed to comply with either OSHA regulations or other similar work place safety regulations or EPA regulations or other similar environmental regulations.

Paragraph G(1) of the policy's exclusions section bars coverage for any increase of loss caused by:

> Enforcement of any law, ordinance regulation, or rule regulating or restricting the construction, installation, repair, replacement, demolition, occupancy, operation or other use of property on Described Premises, or which requires process improvements or process modifications to property, when either is required or performed to comply with either OSHA regulations or other similar work place safety regulations or EPA regulations or other similar environmental regulations on Described premises, except as provided in the Property Damage Section of this policy.

Plaintiffs contend that these exclusions should be disregarded as ambiguous. While the policy does not define "process modification" or "process improvement," neither term presents substantial ambiguity here. The addition of roughly thirty new flame arrestors – as required by OSHA regulations – undoubtedly modified and improved the facility.

Plaintiff attempts to confuse the plain language of the policy by arguing that "process improvement" and "process modification" should be read according to the policy's definition of "Improvements and Betterments," which are those parts of the building not owned by the named insured. Like other defined terms in the policy "Improvements and Betterments" is capitalized when used in the policy to indicate its use as a specifically defined referent. Simply because other portions of the policy use the word "improvement" does not indicate that those portions should be read to conform with the "Improvements and Betterments" definition.

Plaintiff's other argument, that the exclusion for enforcement only applies to fines, similarly contradicts the plain language of the policy. "The threat of enforcement is the driving force behind compliance with building and construction codes and ordinances." *State Farm Fire and Cas. Co. v. Metro. Dade County*, 639 So. 2d 63, 66 (Ct. App. Fla 1994) (holding that policy exclusion for increased cost due to enforcement of any ordinance or law was unambiguous and applied to costs created by complying with new building codes).

9

Plaintiff also contends that the policy should not be read to exclude the cost of the flame arrestors because such an exclusion would violate public policy. Plaintiff presents no case law supporting this assertion, and other courts have rejected the idea that exclusions for costs incurred to meet building codes violate public policy. *See e.g., Cohen Furniture Co. v. St. Paul Ins. Co.*, 573 N.E.2d 851, 854 (Ill. App. 1991). TWO should obey the law because it is just that, the law; not because its insurance company will fund compliance. That is the cost of doing business in a regulated area.

## Conclusion

In light of the foregoing, it is hereby

ORDERED THAT:

1. Defendant's motion for summary judgment as to counts two and three of the amended complaint be, and the same hereby is granted;

2. Defendant's motion for summary judgment as to count one of the amended complaint be, and the same hereby is granted as to the cost of the flame arrestors, but denied as to the RAM charges; plaintiff's motion as to the flame arresters be, and the same hereby is denied;

3. Plaintiffs' motion for summary judgment be, and the same hereby is granted as to the policy's limitations provision and otherwise denied.

So ordered.

/s/ James G. Carr
James G. Carr
Chief Judge